O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BONNIE RUTH, ) | Case No.: EDCV 16-01513-JDE |
| ) | |
| Plaintiff, ) | |
| v. ) | MEMORANDUM OPINION AND |
| ) | ORDER |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**I.**

**INTRODUCTION**

Plaintiff Bonnie Ruth ("Plaintiff") filed the Complaint herein on July 11, 2016, seeking review of the denial by the Commission of Social Security ("Commissioner" or "Defendant") of her applications for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI") under Titles II and XVI of the Social Security Act. (Dkt. No. 1.)

The parties filed Consents to proceed before the undersigned Magistrate Judge. (Dkt. Nos. 25, 26.) Plaintiff filed a Memorandum ("Mem.") in support of her Complaint on March 8, 2017, Defendant filed an Answer with supporting Memorandum ("Ans.") on May 10, 2017, and Plaintiff filed a Reply Brief on May 23, 2017. (Dkt. Nos. 19, 24,

1

28.) The matter is now submitted for decision.[1] For the reasons discussed below, the Commissioner's decision is affirmed and this matter is dismissed with prejudice.

## II.

## ADMINISTRATIVE PROCEEDINGS AND BACKGROUND

Plaintiff was born on October 16, 1963. (Administrative Record ["AR"] 18.) Plaintiff alleged disability beginning January 31, 2010. (AR 195, 202.) On September 27, 2012, Plaintiff concurrently filed for DIB and SSI under Titles II and XVI of the Social Security Act. (AR 195-205, 216.) The claims were denied initially on February 1, 2013, and again upon reconsideration on September 6, 2013. (AR 123-28, 131-42.) Plaintiff filed a request for a hearing on October 17, 2013. (AR 143-44.) An Administrative Law Judge ("ALJ") held a hearing on August 26, 2014 and, on October 14, 2014, found that Plaintiff was not disabled. (AR 11-68.) On May 17, 2016, the Appeals Council denied Plaintiff's request for review making the ALJ's decision the Commissioner's final determination. (AR 7-12.) This action followed.

## III.

## STANDARD OF REVIEW

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of no less than twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). In assessing disability claims, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. See Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (citing, *inter alia*,

---

[1] As set forth in the Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative Record and filings by the parties in accordance with Rule 12(c) of the Federal Rules of Civil Procedure, applying the standards set forth in 42 U.S.C. § 405(g).

20 C.F.R. §§ 404.1520(a), 416.920(a)). First, the ALJ considers whether the claimant is currently working in substantial gainful activity. Id. If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months. Id. If so, the ALJ proceeds to a third step to determine whether the claimant's impairments render the claimant disabled because they "meet or equal" any one of the "listed impairments" set forth in the Social Security regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1001 (9th Cir. 2015).

If the claimant's impairments do not meet or equal a "listed impairment," before proceeding to the fourth step the ALJ assesses the claimant's residual functional capacity ("RFC").[2] 20 C.F.R. §§ 416.920 (d), 416.945; Social Security Ruling ("SSR") 96-8p. After determining the claimant's RFC, the ALJ determines at the fourth step whether the claimant has the RFC to perform past relevant work, either as she actually performed it or as it is generally performed in the national economy. 20 C.F.R. § 416.920(f). If the claimant cannot perform her past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. 20 C.F.R. § 416.920(g); Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). If the claimant can do other work, she is not disabled; but if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. Tackett, 180 F.3d at 1099.

---

[2] The RFC represents what a claimant can still do despite existing exertional and non-exertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assess the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

The claimant generally bears the burden at each of steps one through four to show that she is disabled or that she meets the requirements to proceed to the next step, and the claimant bears the ultimate burden to show that she is disabled. See, e.g., Molina, 674 F.3d at 1110; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). However, at step five, the ALJ has a "limited" burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See 20 C.F.R. §§ 404.1560(c)(1)-(2), 416.960(c)(1)-(2); Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision denying benefits to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted).

Although courts will not substitute their discretion for the Commissioner's, courts nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." Molina, 674 F.3d at 1110; see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (court will uphold decision when evidence is susceptible to more than one rational interpretation). However, a court may review only the reasons

stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).

Lastly, even if legal error is found, the reviewing court will still uphold the decision if the error was harmless, that is, where it is inconsequential to the ultimate non-disability determination, or where, despite the error, the Commissioner's path "may reasonably be discerned," even if the Commissioner explains her decision "with less than ideal clarity." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citations omitted).

## IV.

## SUMMARY OF THE ADMINISTRATIVE DECISION

The ALJ calculated that Plaintiff met the special earnings requirements for a period of disability and disability insurance benefits through June 30, 2012. (AR 13.) The ALJ then used the five-step sequential evaluation process to guide her decision. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 31, 2010. (Id.) At step two, the ALJ concluded that Plaintiff has the severe impairments of cervical spine disorder status post-surgery, lumbar spine disorder, disorder of the bilateral knees and bilateral carpal tunnel syndrome. (Id.) At step three, the ALJ decided that the impairment did not meet or equal any "listed impairment."(AR 14.) The ALJ further found that, through her date last insured, Plaintiff retained the RFC to perform light work with the following exceptions:

> [T]he claimant can lift and carry no more than 20 pounds occasionally and ten pounds frequently and can push and pull within those weight limits; can stand and walk for two out of eight hours with no prolonged walking greater than 30 minutes at a time; can sit six out of eight hours with the ability to rise after an hour from a seated position to work at a standing position for 30 minutes; cannot climb ladders, ropes and scaffolds; cannot kneel, crawl, stoop or crouch; can frequently perform

bilateral overhead reaching; cannot perform work that requires
repetitive motion of the neck; cannot be exposed to work hazards such
as working at unprotected heights, operating fast or dangerous
machinery, or driving commercial vehicles; and must avoid all exposure
to extreme cold. Additionally, the claimant can only perform unskilled
work due to the pain and the side effects of medication. (AR 14-15.)

At step four, based on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff is unable to perform any of her past relevant work as a supervisor, food checker, and cashier. (AR 17-18.)

At step five, based on Plaintiff's RFC and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that Plaintiff can perform, including work as a: (1) Cashier II, DOT 211.462-010; (2) Assembler, electrical accessories, DOT 729.687-010; and (3) Assembler, small products, DOT 706.684-022. (AR 18, 19.) Accordingly, the ALJ determined that Plaintiff was not disabled during the relevant period from January 31, 2010 through October 14, 2014. (AR 19.)

## V.
## DISCUSSION

Plaintiff contends that the ALJ made the following errors:
(1) The step five finding that Plaintiff could perform three identified jobs without repetitive neck movement was not supported by substantial evidence;
(2) The RFC assessment was not supported by substantial evidence; and
(3) The determination that Plaintiff was less than fully credible was not supported by substantial evidence.

(Mem. at 3, 5, 6.) As set forth below, the Court affirms the Commissioner's decision.

**1. The ALJ did not err by accepting the VE's testimony at Step Five.**

Plaintiff contends that the ALJ did not meet her burden at step five of the sequential analysis because an unresolved conflict existed between the testimony of the VE, which

the ALJ adopted, and the demands of the alternative jobs the VE identified as described in the Dictionary of Occupational Titles ("DOT"). (Mem. at 3.) According to Plaintiff, the plain language of the descriptions for each occupation provide an obvious and apparent conflict with the limitations that the ALJ provided to the VE when asking if there were jobs in the national economy that someone in Plaintiff's position could perform. (Id. at 4.) Namely, Plaintiff asserts that the descriptions for Cashier II, Assembler (electrical accessories), and Assembler (small products) in the DOT require repetitive neck motion as an "essential, integral, and expected" requirement of those occupations. (Id.) Plaintiff argues that the ALJ erred in not resolving the asserted apparent conflict under Gutierrez v. Colvin, 844 F.3d 804, 808 (9th Cir. 2016).

The Commissioner argues that there is no obvious or apparent conflict in performing the jobs that the VE identified and Plaintiff's inability to engage in repetitive neck motion, citing the descriptions of the occupations in the DOT, and relies on Gutierrez to support the contention that the ALJ's determination at step five was appropriate because there was no obvious conflict. (Ans. at 1-4.)

a. Applicable Law

At step five of the sequential evaluation process, "the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); see also 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In determining whether appropriate jobs exist for a claimant, or whether the claimant can perform her past relevant work, the VE generally will refer to the DOT. See Light v. Soc. Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997). The DOT is usually "the best source for how a job is generally performed." Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001).

SSR 00-4p requires the ALJ to determine whether the VE's testimony deviates from the DOT, and whether there is a reasonable explanation for any deviation. See SSR 00-4p (stating that an ALJ must inquire whether a VE's testimony regarding "the

requirements of a job or occupation" conflicts with the DOT). The procedural requirements of SSR 00-4p ensure that the record is clear as to why an ALJ relied on a VE's testimony, particularly where the testimony conflicts with the DOT. Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007). In making disability determinations, the ALJ may rely on VE testimony that contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation. Light, 119 F.3d at 793.

Although evidence provided by a VE "generally should be consistent" with the DOT, "[n]either the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict." SSR 00-4p. Thus, an ALJ must first determine whether a conflict exists, and if it does, she must then determine whether the VE's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the DOT. Id. Only after determining whether the testimony of the VE has deviated from the DOT, and whether any deviation is reasonable, can an ALJ properly rely on the VE's testimony as substantial evidence to support a disability determination. Massachi, 486 F.3d at 1152-54. Evidence sufficient to support a deviation from the DOT may be either specific findings of fact regarding a claimant's ability to perform particular jobs, or inferences drawn from the context of the expert testimony. See Light, 119 F.3d at 1435 n.7 (ALJ provided sufficient support for deviation by noting that the VE described characteristics and requirements of jobs in the local area consistent with claimant's RFC); Terry v. Sullivan, 903 F.2d 1273, 1279 (9th Cir. 1990) (ALJ may infer support for deviation where VE's understanding of applicable legal standards is clear from context).

    b. <u>Analysis</u>

Both parties cite to <u>Gutierrez</u> to support their arguments related to the potential conflict between the VE's testimony and the descriptions in the DOT. In <u>Gutierrez</u>, the plaintiff was largely unable to engage in overhead reaching or lifting with her right arm. 844 F.3d at 807. Notwithstanding this limitation, the VE testified that the plaintiff would be able to perform work as a cashier, which the DOT lists as requiring "frequent

8

reaching." Id. The ALJ adopted the VE's assessment and found that the plaintiff was not disabled. Id. On appeal, the plaintiff argued that the VE's testimony that the plaintiff could work a cashier despite her reaching limitations conflicted with the DOT because the DOT states that cashiers must engage in frequent reaching. Id.

The Ninth Circuit rejected the plaintiff's argument. With respect to whether a conflict exists between a VE's testimony and the DOT, the court held that:

> For a difference between an expert's testimony and the [DOT's] listings to be fairly characterized as a conflict, it must be obvious or apparent. This means that the testimony must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected. Id. at 808.

The holding and reasoning of the Ninth Circuit in Gutierrez, decided in 2016, is of particular import here, and of course controls this Court's decision, unlike the district court cases from 2011 and 2014 cited by Plaintiff. (Mem. at 5.)

In this case, there are no differences between the VE's testimony and the DOT that are "obvious and apparent." Nor is the possibility that repeated neck movement, as Plaintiff alleges, is an activity that is "essential, integral, or expected" of one who engages in the three occupations identified by the VE. See DOT Nos. 706.684-022 (assembler of small products); DOT Nos. 729.687-010 (assembler, electrical accessories); DOT Nos. 211.462-010 (cashier II); see also Pinto, 249 F.3d at 845–46 ("the best source for how a job is generally performed is usually the Dictionary of Occupational Titles") (internal citation omitted); Johnson, 60 F.3d at 1435 (the DOT raises a presumption as to job classification requirements). The DOT reflects that the jobs in question do not require any climbing, balancing, stooping, kneeling, crouching, or crawling. The Court agrees with the Commissioner's position that even if a few of the activities contained in the DOT's descriptions could conceivably involve some neck motion, nothing in the DOT suggests that the occupations require repetitive neck motion that is essential, integral, or expected for the successful performance of the listed occupations. (Ans. at 2.)

9

The ALJ confirmed that the VE's testimony did not deviate from the DOT and the VE based his opinion of available occupations upon a limitation of "no repetitive motion of the neck." (AR 61, 63.) The ALJ properly consulted with a VE who indicated that there were jobs that the Plaintiff could perform and therefore did not err in the step five determination. See Dewey v. Colvin, 650 Fed. App'x. 512, 514 (9th Cir. 2016).

**2. The ALJ's RFC determination is supported by substantial evidence.**

Plaintiff contends that the ALJ's RFC assessment is not supported by substantial evidence, asserting that the ALJ erred in crediting the conclusions of Dr. Lorber, a non-examining physician expert who testified during the 2014 hearing. (Mem. at 5.) Specifically, Plaintiff alleges that Dr. Lorber overlooked evidence of lumbar radiculopathy provided by Plaintiff's treating physician, Dr. Etemad, and that the ALJ erred in not describing why he failed to take such evidence into account. (Id. at 5-6.)

Defendant argues that Plaintiff misinterprets the record and that Plaintiff's treating physician provided a diagnosis of cervical lumbar radiculitis as opposed to radiculopathy. (Ans. at 7.) She further asserts that Dr. Lorber provided detailed testimony that did not ignore probative evidence and that the ALJ was well within her authority to credit the doctor's testimony. (Id.) Finally, Defendant argues that the ALJ provided substantial evidence, supported by citations to the record, to support the conclusion that Plaintiff's allegations of a lumbar impairment did not preclude her from light work. (Id. at 7-8.)

a. Applicable Law

In determining RFC, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and non-exertional, severe and non-severe. 42 U.S.C. §§ 423(d)(2)(B), (5)(B). In weighing medical opinions, the Ninth Circuit distinguishes among: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is given to the opinion of a treating physician than

to the opinions of non-treating physicians. Id. This is true because treating physicians are employed to cure and have a greater opportunity to know and observe the claimant. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons; where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. Id.

Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." Orn, 495 F.3d at 631. A nonexamining medical expert's opinion may constitute substantial evidence when it is consistent with other independent evidence. Morgan v. Apfel, 169 F.3d 595, 599-600 (9th Cir. 1999) ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it.").

  b. Analysis

As neither party disputes Dr. Lorber's explanation of the distinction between radiculitis and radiculopathy, the Court refers to the following colloquy between Plaintiff's attorney and Dr. Lorber during the hearing to assist in understanding the difference:

> ATTORNEY: Oh, once again. You stated earlier, doctor, that the claimant had -- that the doctors had used the term radiculitis, correct, instead of radiculopathy --
>
> LORBER: That is correct.
>
> ATTORNEY: -- because there is a distinction between both medical conditions, right?
>
> LORBER: Well, they hold that there is a distinction, yes.
>
> ATTORNEY: Is it a significant distinction?

LORBER: I just pointed out --

ATTORNEY: Okay.

LORBER: -- that the difference is, in one condition diagnosis is supported by the findings of focal neurological deficit, and one is largely based upon subjective complaints without substantiation or focal neurological deficits on a clinical basis. So I believe that is a very significant difference. (AR 46.)

Dr. Lorber further explained that a finding of lumbar radiculitis is typically given when "there is insufficient evidence to support the diagnosis of radiculopathy" which requires the showing of, among other things, a nerve root or spinal impingement (AR 45, 47.) Dr. Lorber went on to testify that the only physician who had diagnosed Plaintiff with lumbar radiculopathy – Dr. Alves – had not provided evidence to support the diagnosis and intimated that the diagnosis should be discounted. (AR 46-47.) Plaintiff offers no contrary evidence in the record regarding Dr. Alves. The ALJ appropriately discounted Dr. Alves's diagnosis of radiculopathy as she "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)

Plaintiff's argument against the RFC determination is that the ALJ failed to take into account evidence of an electroymyography or EMG study conducted by Dr. Etemad, which Plaintiff asserts indicates a diagnosis of radiculopathy. (Mem. at 5-6.) However, Plaintiff is incorrect in asserting that Dr. Etemad provided probative evidence of lumbar radiculopathy. The diagnosis that Dr. Etemad provided on August 3, 2012, is of cervical neuritis/radiculitis; lumbar degenerative joint disease and degenerative disc disease; and lumbar neuritis/radiculitis. (AR 520.) This is confirmed by a report written on September 6, 2012, by Richard F. Castro, a qualified medical evaluator, during Plaintiff's functional capacity evaluation. The report reads "[Plaintiff] has been referred with the diagnoses of

Cervical radiculitis, Lumbar degenerative disc disease and Lumbar neuritis/radiculitis." (AR 523.) The report also lists Dr. Etemad as the referring physician. (Id.) Applying Dr. Lorber's explanation of how physicians diagnose radiculitis to the facts in the instant case, Dr. Etemad's diagnosis indicates that there was insufficient evidence to support a finding of lumbar radiculopathy. Therefore, Dr. Lorber's testimony is consistent with the diagnosis of Plaintiff's treating physician as neither doctor provided evidence that Plaintiff suffered from radiculopathy.

As there was no evidence in the record that any treating physician, or any physician, diagnosed lumbar radiculopathy, the ALJ had no need to "refute the existence of [] objective medical evidence" of radiculopathy. The ALJ's acceptance of Dr. Lorber's testimony in assessing Plaintiff's RFC is supported by substantial evidence.

### 3. The ALJ provided clear and convincing reasons for discounting credibility.

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for discounting her credibility, taking issue with the ALJ's finding that the medical evidence did not support the severity of her reported symptoms. (Mem. at 7-9.) Specifically, Plaintiff suggests it was improper for the ALJ to consider the absence of treatment for wrist pain as undermining her credibility given that Plaintiff had testified during the hearing that she lacked medical insurance and was paying cash for treatments. (Id. at 7.) Plaintiff further argues that the ALJ failed to consider evidence in the record supporting findings of knee, neck, and back pain. (Id. at 8.)

The Commissioner argues, first, that the ALJ evaluated the medical evidence in detail, noting how it failed to support the extent of Plaintiff's alleged limitations from alleged arm, wrist, spine and knee impairments. (Ans. at 9.) Second that Plaintiff's credibility was diminished by inconsistencies in her statements, which were highlighted by the ALJ. (Id. at 12) Third, and finally, the Commissioner points to the lack of recent treatment records, beyond medical refills, as evidence of inconsistency with allegations of disabling pain from Plaintiff. (Id.)

13

### a. Applicable Law

The determination of credibility and the resolution of conflicts in the testimony are functions reserved to the ALJ. Morgan, 169 F.3d at 599; Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). In general, an ALJ's assessment of credibility should be given great weight. Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985); see also Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) ("ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking").

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. Lingenfelter, 504 F.3d at 1035-36. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter, 504 F.3d at 1036 (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (internal quotation marks omitted)). Second, if the claimant meets this first test, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Lingenfelter, 504 F.3d at 1036 (citing Smolen, 80 F.3d at 1281).

When analyzing a claimant's subjective symptoms of pain, the ALJ may consider factors relevant to the symptoms such as, *inter alia*, the claimant's daily activities; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medication; treatment, other than medication, that the claimant receives or has received for relief of pain or other symptoms; or any other measures that the claimant has used to relieve pain or symptoms. See 20 C.F.R. § 404.1529. The ALJ may employ "ordinary techniques of credibility evaluation," such as prior inconsistent statements concerning symptoms, testimony that appears less than candid, or unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment, in assessing a claimant's credibility. See Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008)

(citations omitted). If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." <u>Thomas v. Barnhart</u>, 278 F.3d 947, 959 (9th Cir. 2002).

  b.  <u>Analysis</u>

In satisfying the first step provided in <u>Lingenfelter</u>, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. (AR 16.) However, at the second step, the ALJ found that Plaintiff's credibility regarding the severity of the symptoms is "diminished" because: (1) it was "greater than expected in light of the objective medical evidence in the file" (AR 16); (2) it was "diminished further by inconsistencies in her statements of record" (AR 17); and (3) "[m]ore importantly," the "allegations of disabling pain" are undermined by the fact that the medical evidence is "nearly devoid of recent treatment records." (AR 17.)

As an initial matter, although the ALJ provided three reasons for the credibility determination, Plaintiff only challenges one – inconsistency with objective medical records. (Mem. at 7-8). As the Commissioner noted in its answering memorandum, the other two unchallenged bases support the credibility finding.

First, the finding that Plaintiff's "credibility regarding her alleged symptoms and limitations is diminished further by inconsistencies in her statements in the record," is both appropriate and supported by the record. (AR 17.) "[P]rior inconsistent statements concerning the symptoms" are expressly identified as a ground which is properly considered by an ALJ in assesses credibility. <u>Tommasetti</u>, 533 F.3d at 1039; 20 C.F.R. § 404.1529(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence . . ."). The ALJ properly cited to and considered such inconsistencies.

Second, the ALJ's finding that the record was "nearly devoid of recent treatment records," suggestive that, other than obtaining medical refills, Plaintiff was not pursuing "active treatment for any of her alleged conditions, which undermines her allegation of

15

disabling pain," was appropriate and supported by the record. (AR 17.) A failure to seek treatment is a clear and convincing reason for discounting testimony of disabling pain. See Tommasetti, 533 F.3d at 1039 (it is permissible to infer that that one's pain is not all-disabling when aggressive treatment to ameliorate such pain is not sought); Burch, 400 F.3d at 681 (if the pain was not severe enough to motivate the plaintiff to seek treatment, it is powerful evidence regarding the extent to which she was in pain); Orn, 495 F.3d at 638 ("Our case law is clear that if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated."); Parra, 481 F.3d at 750–51 ("evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment.") (internal quotations omitted).[3]

The ALJ's unchallenged analysis of Plaintiff's inconsistent statements and lack of recent efforts at treatment independently and collectively form clear and convincing reasons, supported by substantial evidence, to support the credibility finding.

Further, with respect to the one factor challenged by Plaintiff, that the alleged severity of symptoms is greater than expected in light of the objective medical evidence in the record, the ALJ cited extensively to evidence in the record. (AR 16, 17.) For example, Plaintiff developed pain in her hands while working in 1994 and subsequently underwent bilateral carpal tunnel and cubital tunnel surgeries. (AR 16.) However, Plaintiff reported no pain or numbness in her wrist during a series of examinations by an orthopedic specialist in 2012 and did not indicate any recent treatment for wrist pain. (AR 16, 413, 439, 464, 484, 499, 517, 560.) While Plaintiff alleged numbness and pain radiating down to her legs, neurological examinations were consistently normal and only once showed

---

[3] Plaintiff referred to her testimony that she had no medical insurance and had to pay cash for treatment. (Mem. at 7.) Although an inability to pay for treatment cannot be a reason to discount credibility (see Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995)), Plaintiff did not claim that she could not afford treatment. Instead, although she references the difficulty of not having insurance, she confirms that she could and did pay for treatment in cash. (AR 52.)

16

decreased sensation. (AR 16, 279-80, 291-92, 300-01, 309-10, 319-20, 328, 334, 336, 599, 610, 627, 632, 643, 655, 664, 673, 683, 693, 703, 712.) As explained above, Plaintiff's treating physician, Dr. Etemad, diagnosed lumbar radiculitis which is a diagnosis based primarily on subjective complaints as opposed to medical evidence. (AR 16, 45-46, 416, 438, 440, 463, 465, 467, 483, 485, 487, 498, 500, 502, 516, 518, 520.) At Plaintiff's final appointment with Dr. Etemad, he removed mention of radiculitis altogether (AR 16, 563.) And though Plaintiff contends that she had significant pain in her knee that the ALJ failed to take into consideration, when Plaintiff was examined in 2012 after another work-related injury, she only once reported pain and weakness in her knees over the course of seven examinations undertaken over a period of roughly 9 months, and consistently had a full range of motion. (AR 16, 415, 440, 466, 486, 501, 519, 562.)

The ALJ's stated bases for finding Plaintiff's credibility was diminished, both individually and collectively, provided specific, clear and convincing reasons, supported by substantial evidence, to support the finding.

## VI.

## CONCLUSION AND ORDER

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

DATED: July 10, 2017

JOHN D. EARLY
United States Magistrate Judge